The next matter, number 24-1443, DraftKings, Inc. v. Michael Z. Hermalyn. At this time, would Counsel for the Appellant Hermalyn please introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court, Chris Michel for Appellant Michael Hermalyn. With the Court's leave, I'd like to reserve three minutes for rebuttal. Yes, you may. Mr. Hermalyn left his job at DraftKings' New York office and moved to California to pursue a better opportunity for his career and his family. DraftKings then sued him for violating a non-compete agreement, even though that agreement is void and unenforceable in California, which expressly encourages out-of-state employees like Mr. Hermalyn to move there and compete freely. To overcome that obstacle, DraftKings attempts to assert a Massachusetts choice of law provision in the agreement, even though Mr. Hermalyn entered into that agreement as a New Jersey resident who was working in New York, and even though he allegedly breached the agreement in California. The District Court erred in entering a preliminary injunction on that claim, and this Court should vacate the preliminary injunction to that limited but important extent. This case satisfies all three elements of Massachusetts' public policy exception to choice of law in a contract. First, California undisputably has a fundamental public policy interest against enforcement of non-compete agreements, and California also has both a materially greater interest and the most substantial interest of any state in the resolution of this dispute. Simply put, enforcing California law in this case will not violate any Massachusetts public policy, but enforcing Massachusetts public policy would nullify the California statutes that were recently enacted. Well, explain. I'm not quite sure how you get there on that, because it seems to me the issue of non-competes has been an issue over a hundred years of increasing attention. Massachusetts legislature convened hearings and proceedings on it and came up with a statute that's quite reticulated, that makes certain public policy balances, allowing and not allowing alike. And how can you say that's not an important public policy, those balances made by the Massachusetts legislature, so much so that a Massachusetts court would not apply it? Well, Your Honor, if the question is, would the Massachusetts law produce a different result than California law in this case, I think that's likely true. Of course, that's the issue in every choice of law case. Isn't that because of a policy decision made by the Massachusetts legislature? It's because of the law enacted by the Massachusetts legislature, but that's true in every choice of law case. And I think if you look at the SJC's decision in Oxford, for example, the court there followed the reasoning that we're urging here. It said California has a more categorical and a deeper fundamental public policy interest in non-enforcement of non-competes than Massachusetts. What's your litmus test or scale here for saying that California's interest in not enforcing non-compete clauses is deeper or higher or more significant than Massachusetts' interest in enforcing these clauses in certain well-defined circumstances? Sure, and I think this is what the court was recognizing at Oxford. Of course, that was even before these California statutes. An important aspect of these California statutes is that they're expressly intended to apply to out-of-state workers who then move into California. It would be hard to imagine, I think, a more on-point legislative enactment than California's enactment here. Massachusetts, although it certainly has made a policy judgment, has not made any contrary policy judgment when it comes to workers moving to California or workers leaving the state. And I think that's what the Oxford court was getting at when it said that California's fundamental public policy interest is deeper. I'm not sure there's any precise test to tell which has a deeper interest, but this court, for example, in the Wythaka case, had little trouble concluding that Massachusetts' interest in that case in applying the presumption against class action or the prohibition on class action waivers and arbitration agreements was deeper and more fundamental than Washington State's in that case. So in different issues, this is going to cut in different directions. But as Your Honor said, the California issue is very well known and is really one of the paradigmatic bases that courts in Massachusetts and in this circuit and in other circuits have used to apply the public policy exception. I would also make the point that Massachusetts itself has a policy that's somewhat like this when employees move to Massachusetts. That's subsection E of the new statute, which we discussed at our reply brief. It says when an employee moves to Massachusetts and is a resident for 30 days, Massachusetts' non-compete provisions apply. So it's trying to attract residents just like California is, and there's nothing untoward about enforcing California's position on that issue. So if 49 states say these clauses in certain circumstances are enforceable and will be what upheld because they are beneficial to the economy in those states, you would say all 49 of those states must create an exception that says you can compete if you move to California? Well, Your Honor, a couple of responses to that. But isn't that what you're saying? I'm not sure that it would necessarily have to be all 49 states. Each case... Well, which one wouldn't it be? Well, I think each case has to be analyzed on its own facts, and I would say... So give me an example of one that your argument wouldn't necessarily lead to the conclusion that that state must, even its own courts, must say doesn't apply if you go to California. Part of the analysis, I want to underscore that the policy analysis is only part of the equation. There's also a geographic equation. If you had all the interests on the geographic side concentrated in Massachusetts, or whatever the state that has the opposing policy is, that would be a more difficult question. We think an important part of this case is that the interests on the East Coast are diffuse, whereas they're concentrated in California. So I could imagine, and I don't think this Court has to say categorically, that in every single possible case, if the other state's policy is going to control the geography could make a difference. But I would say, I don't think it's that unusual for states to... This is life in a horizontal Federalist system. Delaware, for example, has adopted probably the most attractive and generous incorporation laws in the country, and all 49 other states have businesses that go to Delaware for that reason. The other possibility is if 49 states think it's a big problem, they're represented in the United States Congress. Congress can pass a federal law, and of course in this case, the only federal law that's on the books is against the non-compete agreements, which will take effect in September. So my final point would be stepping out of not enforcing the contract in this case is in fact denying draft kings the relatively extraordinary privilege of enforcing a facially anti-competitive restriction on a worker, and that the FTC has said is unlawful, and I don't think the Court should have any trouble doing that. So if tomorrow Florida said, we won't enforce public policy in court, and we won't enforce public non-compete clauses, the Massachusetts courts would have to bow down to that and say, well, any injunction we issue won't cover Florida either. Well, I think there's two questions. There's the choice of law question, which is our principal submission. We have a backup argument about the scope of the injunction, but our principal submission is about the choice of law issue itself. So to take that hypothetical, I think you would need to analyze the policy interest and the geographic connections. I would, of course, need to know more about the Florida and Massachusetts connections in that case. Massachusetts, of course, if it had a problem with this, could enact a more explicit statute just like California did. In fact, in the list- You mean to say we really mean it? Well, they could say, they could adopt a more rigid policy that says no enforcement of non-compete agreements when employees move out of the state. Well, Massachusetts does have a relationship to the contract. It's the headquarters of the defendant. It's the place of formation of the contract. It's where the contract was negotiated and signed. So Massachusetts does have a relationship to the contract. Well, I agree with you, Judge Thompson. I'm not saying there's no relationship. That was true, of course, in the Oxford case. That was true in the Wythaka case, that the state that's law was displaced had some relationship through the corporate headquarters. I'm just saying that's not enough given all of the interests on the California side. And importantly, this case is not like some of the others in that Mr. Hermelin didn't work in Massachusetts and he didn't live in Massachusetts. So Massachusetts's interest is much more diluted than in some of those other cases. When applying the significant relationship test, what is the relevant time period a court must examine? So I think the court, you know, this is a very flexible test and it doesn't admit of hard and fast rules. I think it's a holistic test. So the court should look at from the time of contracting to the time of breach. Of course, as the court said, as SJC said in Oxford, the breach is important. That's the basis for the lawsuit. That's sort of the main event. So that certainly needs to be part of the analysis. But I agree that looking, you know, at the time before that is part of a holistic analysis, too. I think I read the appellees here as arguing that fluorofluidic says the time period is when the contract was executed. And that's like the lens with which we should look at the situation here. I think they're arguing that, too. But with respect, I don't think that's supported even by fluorofluidics itself, which talks about the employees moved to California and says it is true, quite true, I think, that California has an interest in this case. It just happens to conclude on those facts that New Hampshire and Massachusetts's interests exceeded it. And we have a string side in our reply brief that I think goes through a number of court and the Massachusetts courts that look at the employee, that look at the entire time period. A good example is the Vecino case that this court decided a couple of years ago. In that case, the employee had moved from Massachusetts to Florida during the time period of the relationship. And the court ended up not applying Massachusetts law. So it relied heavily on intervening events that had happened after the time of the contract formation. The district court here, I think, really distinguished the Oxford case, which you rely on a bit in your briefs. Assuming we agree with that Oxford presented a slightly different scenario than we have here, are there other cases that you think we should look at? You know, I think the Feeney case from the Massachusetts SJC is worth looking at, too. But I would respectfully push back on the distinction that the district court drew. I think the distinction that the court relied on principally was that the employee in Oxford had lived in California before the breach of contract happened. But that was not dispositive to the analysis. And I think it would be hard to construct a rule where that is dispositive. Imagine that the employee had moved to California a month ahead of time or two months ahead of time or six months ahead of time. I think it's very hard to draw the line. Nothing in Oxford says that the employee's residence in California throughout that whole period was dispositive. Instead, I think the court should look, as it does in many other contexts, to the employee's physical presence at the time of the breach, the time that the basis of this lawsuit occurred. And that was in California. If the court has no further questions, I'll reserve my time for rebuttal. Thank you, counsel. At this time, if counsel for the Appley Draftkings would please introduce themselves on the record to begin. Good morning. Tom Dupree on behalf of Draftkings, and may it please the court. What happened here was egregious. Mr. Hermelin was a senior Draftkings executive who quit and immediately took the same job with one of our biggest competitors. On his way out the door, he stole our trade secrets. He took the company's crown jewels, business-sensitive information. But you're not relying, you don't need us to rely on any of that. We have a contract interpretation question and a choice of law concerning it. The injunction, as I understand it, isn't predicated on the fact that non-compete clause or not. He stole government secrets and we are company secrets and we should enjoin him. Well, I think that the somewhat striking facts of this case, Your Honor, really underscore, frankly, why the legislature enacted the Massachusetts Non-Competition Agreements Act. This is the paradigmatic case for why Massachusetts businesses need protection from this sort of thing. And as Your Honor correctly noted, the legislature enacted a reticulated statute that does reflect the considered policy judgment by the legislature that non-compete agreements shall be enforceable, provided they adhere to certain limits. They can't be enforced, for instance, against vulnerable or low-wage workers. They have to be temporarily limited and the like. So we think it's relevant for that point. But, Judge Kada, to your point about the California statute and the Massachusetts statute, I think, Your Honor, the thrust of Your Honor's questions was exactly right in that, last I checked, Massachusetts and California were co-equal sovereigns in our system. They each have passed a statute that reflects the considered policy judgments of the respective legislatures. And my friend, Mr. Michel, has provided no basis to say that, well, California's law trumps Massachusetts' law, simply because, I don't know, California feels more passionately about these issues. I think in this case, to Judge Thompson's point, Massachusetts clearly has a far, far, far stronger connection to this dispute and to this employment contract than does California. That's what Judge Kobach recognized. This is a contract that, as Your Honor noted, it was negotiated and signed in Massachusetts. It's a Massachusetts corporation. It's headquartered right here in Boston. And, of course, Mr. Hermelin regularly traveled throughout the course of his employment with DraftKings to Massachusetts to conduct business. This case couldn't be further removed, Judge Montecalvo, from the Oxford case. That case, as Your Honor knows and correctly noted, that involved a totally different situation where you had an employee who was living and working in California year after year after year. That circumstance is the polar opposite of this case. In this case, Mr. Hermelin never was in California. He never worked in California. California has as much connection to this case as Alaska did. Until that night in January, at the end of his employment with DraftKings, when he gets on a plane to LAX, disembarks, makes a dentist appointment, announces he's a resident of California, and therefore he's freed from his contractual obligations in Massachusetts. That's not how the law works. If this court were to accept Mr. Hermelin's argument, it would create a playbook for opportunistic individuals seeking to have their contractual obligations in Massachusetts lifted and circumvented. That can't be the law. This court, the SJC, has long looked to the fundamental test established under the restatement for determining which state has the closer connection to a particular dispute. In this case, again, all indicators point to Massachusetts, none point to California. Judge Montecalvo, to your question about the relevant time period we should be looking at, we think the proper focus is on the time of contracting. I don't want to say it's an exclusive focus and that anything that happened post transaction is irrelevant per se. I think, candidly, that would be going too far. But I think the time of the contracting is important. That's what the SJC told us in the Bushkin case. That was the opinion by Chief Justice Wilkins, where he said that looking to post transactional events injects, these were his words, injects a certain ambulatory quality into the choice of law analysis that discourages certainty. And of course, certainty, predictability, those are the hallmarks of the restatement test. That's what the restatement authors, that's what the SJC has said court should be guided by in making these, in some cases, difficult choice of law decisions. This is not a difficult case. I think if this court were to say that California law governs the contract, that would be the antithesis of predictability and certainty. California had absolutely no role whatsoever in this dispute until that night in January. Well, California thinks it has a role because litigation is ongoing there. Well, look, I don't want to say California has no interest because, to your honor's point, litigation is ongoing there. But again, if you are measuring, as the restatement and SJC tell us we have to do, if we are measuring the strength of the connection between Massachusetts and California, it's not even close. His connections to California, I would also point out, are even more attenuated than he claims. He claims he's a California resident, but of course, as your honor knows, the California court just the other day says Mr. Hermelin is still in the process of establishing his residency in California. And his claim that he's working for a California corporation, that's a sham. That corporation was created the day before litigation began in this case. It's not a real corporation. It's a device. It's a contrivance that was constructed precisely to facilitate Mr. Hermelin's breach of contract. So the California connections in this case are minimal to nonexistent. There are no further questions. We ask that the decision of Judge Kobik be upheld. Thank you. Thank you, counsel. At this time, counsel, for the appellant, please reintroduce yourself on the record. You have a three-minute rebuttal. Thank you very much, Chris Michel, for Appellant Michael Hermelin. Just a few points of rebuttal. I'll start where my friend, Mr. Dupree, left off. California's residency has been confirmed by every court. Mr. Hermelin's residency in California has been confirmed by every court that has looked at it. Judge Kobik's opinion says he established residency in California three days before the alleged breach of the contract. The California State Court, in the decision that we sent to this court on Friday. It's still not clear to me why California's policy concerns have greater import than Massachusetts. I don't understand the argument. Let me try two things. First of all, I think in the abstract, the big difference between California's policy and Massachusetts's policy is that California has expressly articulated an interest in inducing workers from out of state to come to California and work. And Massachusetts has expressed a policy interest in balancing and in some instances, and for a limited period of time, protecting the interests of one of its corporations. It has articulated that interest. But I think the competing interests. I mean, I can't do any better, I don't think, than the Massachusetts Supreme Judicial Court on page 565 of the Oxford opinion, which says Massachusetts presently has no comparable legislative policy favoring open competition and no statute akin to California's statute. So that's what Massachusetts courts, interpreting Massachusetts law principles that this court follows, has said in conducting that kind of balancing. And I think that's sensible, but I also think that it's it's authoritative because that's what Massachusetts has said in the past. They said we don't have a statute like California. It's that the that's true. So what they don't. And yet you want them to act as if they did. Well, no, I think it's important that California has. They're not saying we don't want to have any statute. They're saying we don't have one like California. I mean, that is what was true at the time of Oxford and the Massachusetts Supreme Judicial Court said that California's fundamental policy interest was materially greater in that in that case. You know, I think that there's a good reason for the court saying that. But I also think it's important that the court did say that and that this court, you know, follows Massachusetts interpretation of its own. But there's also a factual difference between these cases, correct? There is a factual difference between these cases. Although this part of the opinion is analyzing just this policy question that we've been discussing. And I accept there's a factual difference. You know, the Oxford case was, you know, maybe a 90-10 case in favor of California. And I can't come here and tell you that we have a case that's that lopsided. You know, this case might be 60 percent for California, 30 percent for Massachusetts and 10 percent for New York and New Jersey. But that's still enough for California to have the materially greater interest and be the state with the most significant relationship. And I don't think my friend articulated any way to draw a line. You know, he points out that Mr. Hermelin moved three days earlier. But I'm not sure what he would say about three weeks or three months. And I don't think there's any principled basis for the court to rely on the three days in that way. I have one more question. How, under your interpretation, could he sitting in California solicit, pick up the phone and call someone in Nevada to solicit business? So I want to be precise in answering it. You know, he's currently subject to a preliminary injunction that prevents. No, without the injunction, without the injunction of your adopt, suppose we agreed with you in terms of how this should all be resolved. Yeah, but I'm trying to be. However, it all should be resolved. There should be no injunction at the end of the day. Your second argument. So there should be an injunction, but the injunction should allow him in California to compete. Our position is that the California territorial presence is what matters, but he can make calls outside of California, including the Massachusetts, including the Massachusetts. Yes, from working from California. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.